### MARTIN MOONEY v. THE STATE.

*No. 3381.    Decided December 13.*

1. **Rape by Means of Fraud — Term Defined.**—"Stratagem," as that term is used in article 529 of the Penal Code defining rape by fraud, means an artifice or trick. And to constitute the fraud essential to render the act of copulation rape, the stratagem resorted to must have been intended by the offender to induce and must have induced the injured female to believe that the offender was her husband.

2. **Rape by Force.**—"Force," as that term is used in article 529 of the Penal Code defining rape, means such force as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case. Such force is made an element of the offense as a criterion by which the question of consent is to be tested; for if no resistance to the carnal act is made by the female the presumption obtains that she consented to the act.

3. **Same—Charge of the Court.**—The prosecution was for rape by force and by fraud. The trial court charged the jury, in effect, that if they believed from the evidence that the defendant "by either force or fraud" had carnal knowledge of the prosecutrix, they should convict. In the total absence of evidence showing the resort to stratagem by the defendant the charge was erroneous.

APPEAL from the District Court of Williamson. Tried below before Hon. W. M. Key.

The opinion states the nature of the case and the penalty assessed.

According to the narrative of Mrs. Grammar, the prosecutrix, this defendant, at about 2 o'clock on the night of May 18, 1890, entered a tent occupied by her husband, herself, her two children, and her sister; climbed over the footboard of the bed occupied by herself and husband; got on her in the old-fashioned, time-honored way and had carnal knowledge of her without her consent, penetrating her sexual organ with his male member while she was asleep. Penetration had been accomplished before the witness became sufficiently aroused from her sleep to realize what was going on, and the process of copulation continued some two or three minutes longer before the witness became aware that the man helping himself was not, as up to that instant she had supposed, her husband. The scent of tobacco betrayed the ravisher—for the witness's husband was not addicted to the tobacco habit. Making this discovery, the witness, while the defendant—for in him was the ravisher subsequently identified—was still on her and exerting his loins in the carnal act, called to her husband, sleeping at her side, for rescue. She finally aroused her husband, who refused to credit her statement that a stranger was even then poaching upon his preserves, until physical contact with the stranger aforesaid vindicated the witness's assertion. Thus admonished that his marital rights were being invaded, the witness's said husband produced a pistol from under his pillow, pressed the same against the body of the defendant, and made a remark about shooting. Thereupon the defendant got off of witness and out of bed, stood on the floor by the bed until he buttoned up his pants, and then walked out of the tent. Witness's husband, pistol in hand, followed the defendant out of the tent, and with the aid of a gentleman who occupied an adjoining tent arrested the defendant. The defendant did not utter a word during the transaction. At no time before she smelled the tobacco was the witness more than half awake, and up to that time she fully believed that she was covered by her husband. This belief was partially due to the fact that the defendant got on her while she was asleep—a by no means infrequent practice of her husband—and reached her by climbing over the footboard of the bed, a habit which to some extent characterized her husband. In calling her husband she told him that "a man was on her." She made no other outcry and no resistance after she became aware that another than her lord was copulating with her, for the reason that she feared violence.

Omitting interesting and exciting details, the above is in substance the *what nerve!* direct statement under oath of the prosecutrix.

To the extent of his participation in the episode the husband of the prosecutrix corroborated her.

The Grammars and Mrs. Grammar's sister comprised a strolling party which, at small towns, gave tent entertainments, consisting of phrenological lectures and musical rehearsals.

On her cross-examination Mrs. Grammar admitted that the defendant visited her tent during the afternoon preceding the offense, but declared that she paid little attention to him and less to what little he had to say on that visit, and could not recall a remark he made. She denied that she was a fortune teller or that she ever attempted to tell fortunes. She denied that she was running a deck of cards when the defendant came to the tent during the afternoon. She denied that the defendant then spoke to her about telling his fortune and that she said to him, "You did not come here to get your fortune told, but you came for something else." She denied that she then asked him if he had any money and proffered him the carnal use of her person for $1.50. She denied that the defendant then gave her two silver dollars, and that she closed the tent door and sat across his lap and ministered to his carnal appetite in that posture. She denied that after thus copulating with the defendant on that afternoon she told him to come back to the tent during the night, after she had retired, and "do it right, in bed," indicating to him at the time the particular bed in the tent and the place on that bed he would find her. She denied that defendant came into the tent and got into bed with her and on top of her, and introduced his male member into her sexual organ, in accordance with such an agreement. She denied that she was awake when defendant got into the bed and on top of her, and that she then told him that he had failed to come at the hour agreed upon, and cautioned him about making a noise in performing the copulative act. She denied that she turned over in bed and separated her legs to enable the defendant to have intercourse with her. She denied that the defendant "worked on" her regardless of the noise created by the operation and talked to her in a loud voice, and that it was under those circumstances that she called to her husband. The witness experienced no difference between the methods of copulation as practiced by the defendant and her husband, except that the defendant was somewhat the heavier man.

The defense rested solely upon the testimony of the defendant in his own behalf. He testified affirmatively to all the facts denied by Mrs. Grammar on her cross-examination, and further that the two copulative acts — in the afternoon in a sitting position and at night in bed — were performed and paid for by him with Mrs. Grammar's full consent, and that she aided him in accomplishing penetration. He declared further

that Mrs. Grammar at no time told him that she was a married woman,. and that when he got in bed with her, according to previous arrangement,. he did not know that she had a husband.

No brief for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

HURT, JUDGE.—This is a conviction of rape, the punishment assessed being five years in the penitentiary.

This will stand as one of the most remarkable cases ever tried in the criminal courts of Texas. The evidence is peculiar and contradictory, and, in the opinion of the writer, staggers credulity. But we have no time to analyze it, and will address ourselves to the legal questions arising upon the different phases of the evidence.

The indictment alleges that carnal knowledge was obtained by force and by fraud. The State seeks to sustain the conviction upon two hypotheses: First, that appellant used some stratagem by which the woman, Mrs. Grammar, was induced to believe that appellant was her husband, and by which the carnal knowledge was obtained. Second, that Mrs. Grammar was asleep when she was penetrated by appellant, and hence the offense was consummated *without her consent*, and was therefore rape.

As to the first proposition—fraud—the statute provides that the fraud must consist in the use of some stratagem by which the woman is induced to believe that the offender is her husband. Penal Code, art. 531. This portion of the article is all which bears upon the question before us.

The offender must use some stratagem. What is meant by the word stratagem? Mr. Webster defines "stratagem" as follows: "An artifice, particularly in war; a plan or scheme for deceiving an enemy; a trick by which some advantage is intended to be obtained; any artifice."

What effect must the stratagem—the trick or artifice—have upon the woman? It must induce her to believe that the offender is her husband. Hence we conclude that the accused must use some stratagem as thus defined, with the intention of deceiving the woman, and the deception must induce her to believe the accused to be her husband. What stratagem, device, trick, or artifice was used by appellant, inducing Mrs. Grammar to believe him to be her husband?

Now the appellant is not guilty of the rape by fraud, though Mrs. Grammar did honestly believe him to be her husband. He must have used some stratagem for the purpose of inducing her thus to believe, and she must have been induced to so believe by the stratagem used by the appellant.

The State contends that as Mrs. Grammar was in bed, late at night, fatigued and asleep, and being a married woman, under these circum-

stances she did believe that appellant was her husband.    Concede this to be so, the question is, did appellant use any stratagem to induce her to believe him to be her husband?    There is not the slightest fact in this record tending to show that appellant resorted to stratagem, device, or artifice to deceive this woman and induce her to believe him to be her husband.    Appellant swears he did not know her to be a married woman; nor is there evidence, positive or circumstantial, remotely tending to prove that he did know that she was a married woman.    Hence that he induced her to believe him to be her husband is preposterous.

The court charged the jury that if they believed from the evidence that the defendant "by either force or fraud" had carnal knowledge of the prosecutrix, they should convict.    This was error, because there was no fraud such as is defined and required by the statute in this case; and this error was strongly calculated to mislead the jury to the injury of the accused.    How natural and reasonable was it for the jury, under the circumstances of this case, to have found fraud, especially as the court submitted that issue to them.    King v. The State, 22 Texas Ct. App., 650; Rex v. Jackson, 2 Lead. Cr. Cases, 254; Regina v. Clarke, Id., 255.

The second position urged by the State is that "the woman being asleep when penetrated, rape is the result, though no greater force is used than that involved in the act."    We have given this proposition a thorough examination.    The authorities are quite inharmonious.    Apparently there is a serious conflict of opinion upon this subject, but when carefully scrutinized the conflict will be found to a great extent apparent only.    Our researches lead us to these conclusions: If the statute defines rape to be carnal knowledge of a woman by force and *without* her consent, then the proposition above stated is correct.    On the other hand, if the statute defines rape to be the carnal knowledge of a woman by force and *against* her consent, then the proposition is not correct.    Some cases hold the proposition correct whether the statute says *against* or *without*.    Harvey v. The State, S. W. Rep., December 1, 1890.

But we will let Lord Campbell, C. J., state the rule.    He states the result of the authorities very clearly as follows: "The question is, what is the real definition of the crime of rape, whether it is the ravishing a woman *against* her will or without her consent.    If the former is the correct definition, the crime is not in this case proved; if the latter, it is proved."    Regina v. The Fletcher, Bell C. C., 71.

But it may be asked what about force?    If only the force commonly involved in the act is sufficient, why is it made a part of the definition of the offense?    From the authorities we conclude that force is added as a test of consent.

Without any test we know absolutely that if asleep she did not consent.    If awake, to be raped she must not consent.    Here we have a question of fact which, owing to its nature, is very difficult of solution, and hence the

necessity for a severe and searching test.   Our statutes provide that the. "force must be such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."   When the woman is asleep there is no contest of strength, and hence no necessity for greater force than that ordinarily involved in the act.   If awake the contest arises; threats apart, every exertion in her power under the circumstances must be made to prevent the crime, or consent will be presumed.   This is the general rule.   There are exceptions other than that where the woman is. asleep, but they need not be noticed here.

Now let us for a moment return to the facts of this case.   If it was. certain that Mrs. Grammar was asleep the charge relating to fraud would be held harmless.   Was she asleep?   This is by her own testimony very doubtful.   She says she was sound asleep, but she also says that defend-. ant "came to me over the foot of the bed."   She says that she was par-- tially asleep and partially awake all the time.

This woman must have been very sleepy.   She saw defendant when he got on the bed, thinking him her husband, but went sound asleep before he got on her.

We will not discuss this testimony further, remarking that it is not cer-. tain that she was asleep.   This being the case, the charge of the court re-. lating to fraud was, as said above, misleading to the injury of appellant, for which the judgment must be reversed and the case remanded for a. new trial.

*Reversed and remanded..*

Judges all present and concurring.